United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN F. REED, SR., ET AL,

    Plaintiffs,

v.

WELLS FARGO BANK, ET AL,

    Defendants.

                                     /

No. C 11-00194 JSW

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

Now before the Court is the motion for preliminary injunction filed by plaintiffs Benjamin F. Reed, Sr. and Irma M. Reed (collectively, "Plaintiffs"). Having considered the parties' papers and the relevant legal authority, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

On January 5, 2011, Plaintiffs filed a complaint in the Superior Court for the County of San Francisco, to enjoin foreclosure and challenge the mortgage servicing practices of defendant Wells Fargo Bank, N.A ("Wells Fargo"), as the successor in interest to Wachovia Mortgage FSB. Plaintiffs allege causes of action for injunctive relief, financial elder abuse, unfair business practices, accounting, and breach of contract arising from two loans made to Plaintiffs by Wachovia Mortgage to refinance two properties in San Francisco. The loan made on Plaintiffs' principal residence at 2 Warren Drive (the "Home") is evidenced by the "Adjustable Rate Mortgage Note Pick-A-Payment Loan" for loan number 0047923503 dated January 17, 2008 in the original principal amount of $754,800.00. (Compl. Ex. A.) The loan

made on Plaintiffs' rental property at 1534 44th Avenue (the "Rental Property") is evidenced by the "Adjustable Rate Mortgage Note Pick-A-Payment Loan" for loan number 0048186258 dated February 12, 2008 in the original principal amount of $425,000.00. (Compl. Ex. B.) Each loan is secured by a first priority deed of trust and a note. (*See* Suppl. Req. for Judicial Notice, Exs. 10 and 11.)

At the time Plaintiffs entered into the loans, Plaintiff Benjamin F. Reed was almost 80 years old, and Plaintiff Irma M. Reed was 78 years old. (Compl. ¶ 6.) Plaintiffs allege that they believed they had applied for fixed rate mortgage loans to refinance their properties, and instead were steered by Wells Fargo's predecessors in interest, their agents and representatives, into "Pick-A-Payment" Loans, which included provisions for highly volatile adjustable interest rates and negative loan amortizations, which resulted in the principal balances exceeding the original principal amounts of the Loans, and monthly payments that more than doubled. (*Id.*) Plaintiffs allege that "Pick-A-Payment" Loans have been the subject of an ongoing investigation by the California Department of Justice to determine if they violated California law, including Section 17200 and 17500 of the California Business and Professions Code. (*Id.* ¶ 6 and Ex. C.)

Plaintiffs defaulted on both loans, and notices of default were recorded on August 24, 2010 for the Rental Property loan and September 30, 2010 for the Home loan. (Compl. ¶ 12.) A Notice of Trustee's Sale was recorded and served for the Rental Property on November 24, 2010, noticing a sale date of December 21, 2010, which was postponed to January 5, 2011. (*Id.* ¶ 13.) Plaintiffs filed this action in San Francisco Superior Court on January 5, 2011.

On January 5, 2011, the state court issued a temporary restraining order and order to show cause why a preliminary injunction should not be issued to enjoin Defendants from foreclosing and/or selling Plaintiffs' Home and/or Rental Property. (Notice of Removal, Ex.B.) The state court ordered Defendants to file an opposition to the order to show cause by January 18, 2011, and set the show cause hearing for January 26, 2011. Wells Fargo removed the action to this Court on January 13, 2011. Defendant NDEX West, LLC joined in the removal.

Wachovia Mortgage, a division of Wells Fargo, filed a motion to dismiss all causes of action in the complaint and noticed the motion for hearing on March 11, 2011. Upon Plaintiffs'

2

1 failure to file an opposition or other response to the motion to dismiss, the Court issued an order
2 to show cause why the case should not be dismissed for failure to prosecute. Plaintiffs filed a
3 timely response to the order to show cause, which the Court discharged during the initial case
4 management conference held on April 29, 2011. The Court reset briefing on Defendant's
5 motion to dismiss and set the hearing on the motion to dismiss on June 17, 2011. The Court
6 also ordered that the TRO issued by the state court remain in effect until May 16, 2011, and
7 ordered briefing on Plaintiff's motion for preliminary injunction. Plaintiffs timely filed the
8 present motion for preliminary injunction.

9 At the case management conference, the parties informed the Court that Plaintiffs
10 applied to Wells Fargo for loan modification on the Home loan, that Wells Fargo agreed to
11 postpone the foreclosure sale of the Home until May 16, 2011, and that Plaintiffs were required
12 to submit the required information by May 1, 2011. (Doc. no. 15 at 7.) Wells Fargo further
13 represented that the Rental Property is not eligible for a loan modification. (*Id.*) The parties
14 have not provided the Court with more current information on the status of Plaintiffs' request
15 for modification of the Home loan.

16 Wells Fargo's objection to the declarations of Ralph Kerstetter and Irma Reed in support
17 of Plaintiffs' motion for preliminary injunction is overruled and the motion to strike is denied.
18 (Doc. no. 20.) The Court will consider Wells Fargo's objections as they pertain to the weight of
19 the evidence presented.

## ANALYSIS

### A.     Applicable Legal Standard

22 In order to obtain a preliminary injunction, Plaintiffs "must establish that [they are]
23 likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of
24 preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in
25 the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S. Ct. 365,
26 374 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an
27 extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is
28 entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

3

1  (*per curiam*)).  Thus, "[i]n each case, courts 'must balance the competing claims of injury and
2  must consider the effect on each party of the granting or withholding of the requested relief.'"
3  *Id*. at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  "'In exercising
4  their sound discretion, courts of equity should pay particular regard for the public consequences
5  in employing the extraordinary remedy of injunction.'"  *Id.* at 376-77 (citing *Weinberger v.
6  Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

7  In *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), the
8  Ninth Circuit held that the "serious questions" sliding scale approach survived *Winter*, whereby
9  preliminary injunctive relief may be granted if a plaintiff demonstrates "that serious questions
10 going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's
11 favor," thereby allowing district courts to preserve the status quo where difficult legal questions
12 require more deliberate investigation.  *See Sencion v. Saxon Mortg. Services, LLC*, 2011 WL
13 1364007 *2 (N.D. Cal. April 11, 2011).  The plaintiff must also satisfy the irreparable harm and
14 public interest requirements under *Winter*.  *Alliance for The Wild Rockies*, 632 F.3d at 1132,
15 1135.

16 **B.    Analysis**

17 Wells Fargo opposes Plaintiffs' motion on the basis that Plaintiffs fail to show a
18 likelihood of success on the merits because: (1) all claims arising out of loan origination are
19 preempted by the Home Owners Loan Act ("HOLA"); (2) Plaintiffs fail to tender the amount of
20 debt; (3) Plaintiffs fail to state sufficient facts with reasonable particularity to support the
21 Section 17200 claim; (4) Plaintiffs fail to allege breach of contract or breach of the covenant of
22 good faith and fair dealing; and (5) Plaintiffs do not satisfy the elements of a statutory claim for
23 financial elder abuse or for an accounting claim.  Plaintiffs did not file a reply to Wells Fargo's
24 opposition.

25 As discussed below, the Court determines that Plaintiffs have not demonstrated a strong
26 likelihood of success on the merits of their claims, but have sufficiently alleged facts to present
27 serious questions going to the merits of the elder abuse claim.  With Wells Fargo's motion to
28 dismiss set for hearing on June 17, 2011, and briefing to be completed by May 20, 2011, the

4

Court will address in due course the challenges to the sufficiency of Plaintiffs' allegations raised in the pending motion to dismiss.

### 1. Serious Questions Going to the Merits

#### a. Breach of Contract and Unfair Practices Claims

Wells Fargo argues that Plaintiffs' state law claims are preempted by HOLA. "Through HOLA, Congress gave the Office of Thrift Supervision ('OTS') broad authority to issue regulations governing thrifts. . . . As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). Section 560.2 reads, *inter alia*:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

12 C.F.R. § 560.2(a).[1] Section 560.2(b) lists specific types of state laws that are preempted, including

> state laws that purport to impose requirements regarding:
>
> (3) Loan-to value ratios;
>
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable on the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; ...
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applications; [and]
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in mortgages[.]

---

[1] "Federal regulations have no less preemptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

5

12 C.F.R. § 560.2(b). Section 560.2(c) sets forth certain types of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of" Section 560.2(a), including contract, commercial law and tort law. *Id.* § 560.2(c).

In *Silvas*, the Ninth Circuit set forth the analysis to follow in order to determine whether a state law is preempted. First, a court should determine whether the law is the type of law listed in Section 560.2(b). If it is, the analysis ends, and the law is preempted. *See Silvas*, 514 F.3d at 1005 (quoting OTS Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)). If the law in question is not listed in Section 560.2(b), a court should determine whether the law affects lending. If the answer is yes, then, pursuant to Section 560.2(a), a presumption arises that the law is preempted. *Id.* "This presumption can be reversed if the law can clearly be shown to fit within the confines of paragraph (c)," which is to be interpreted narrowly and doubts should be resolved in favor of preemption. *Id.*

Plaintiffs have brought claims against Wells Fargo for breach of contract and unfair business practices in violation of Section 17200. These claims for relief are premised upon state laws of general applicability, "that is [they do] not purport to directly regulate the conduct of mortgage lenders." *Munoz v. Financial Freedom Senior Funding Corp.*, 573 F. Supp. 2d 1275, 1280 (C.D. Cal. 2008) (citing, *inter alia*, *Silvas*, 514 F.3d at 1006). However, those claims still "may be preempted by HOLA if, 'as applied,' [they are] a type of state law that falls within § 560.2." *Id.*

Plaintiffs' allegations relating to the breach of contract and Section 17200 ("UCL") claims are premised upon allegations that Wells Fargo's predecessors in interest did not adequately disclose certain information to them. (*See, e.g.,* Compl., ¶¶ 9-12.) Many district courts have concluded that UCL claims based on such allegations are preempted. *See, e.g., Fultz v. World Savings and Loan Ass'n*, 571 F. Supp. 2d 1195, 1198-99 (W.D. Wash. 2008) (dismissing claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress and unfair practices as preempted); *DeLeon v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 62499, at *12-21 (N.D. Cal. June 9, 2010) (wrongful foreclosure claim was preempted);

*Spears v. Washington Mutual, Inc.*, 2009 WL 605835 at * 5-6 (N.D. Cal. March 9, 2009) (UCL claim for inflated appraisal values were preempted); *Andrade v. Wachovia Mortgage, FSB,* 2009 WL 1111182 at *2-3 (S.D. Cal. Apr. 21, 2009) (claims challenging adequacy of disclosures preempted); *Cosio v. Simental,* 2009 WL 201827 at *5 (C.D. Cal. Jan. 27, 2009) (state law claims that "touch[] upon a defendant's lending practices, operations, and charges" preempted); *Nava v. Virtualbank*, 2008 WL 2873406 at *5-8 (E.D. Cal. July 16, 2008) (dismissing UCL claims as preempted). Some courts have held, however, that breach of contract claims may survive HOLA preemption because a judicial determination whether the parties have performed their contractual obligations "will not alter their lending practices, but only their practice of performing contracts." *Nava*, 2008 WL 2873406 at *9 ("plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims will not potentially impose any requirements for the type of lending activities described in § 560.2(b)"). *See also Spears,* 2009 WL 605835 at * 5-6 (N.D. Cal. March 9, 2009) (granting leave to amend breach of contract claim). The Court determines for the purposes of this motion that the UCL claim is likely to be determined to be preempted and that the breach of contract claim may survive the motion to dismiss for preemption.

In support of their breach of contract claim, Plaintiffs allege that they were given "false assurances that these loans would enable Plaintiffs to maintain a very low monthly payment, and 'don't worry about reviewing and reading everything, just sign where instructed.'" (Compl. ¶ 11.) Plaintiffs do not, however, allege what contractual terms were allegedly breached. The Court determines, at this juncture, that Plaintiffs have not raised serious questions going to the merits of their breach of contract claim. The Court therefore finds it unnecessary on the present motion to reach Wells Fargo's argument that Plaintiffs are required to tender the amount of indebtedness.

### b.   Financial Elder Abuse

State law recognizes claims for financial elder abuse as follows:

> The substantive law of elder abuse provides that financial abuse of an elder occurs when any person or entity takes, secretes, appropriates, or retains real or personal property of an elder adult to a wrongful use or with an intent to defraud, or both. A wrongful use is defined as taking,

7

> secreting, appropriating, or retaining property in bad faith. Bad faith occurs where the person or entity knew or should have known that the elder had the right to have the property transferred or made readily available to the elder or to his or her representative.

*Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 174 (2009) (citing Welf. & Inst. Code, § 15610.30).

Wells Fargo contends that Plaintiffs fail to state a claim for financial elder abuse under Welfare & Institutions Code § 15610.30 because Wells Fargo was not in a position of trust with respect to Plaintiffs, citing *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 436. (Opp. at 12.) In *Perlas*, the court of appeal held that the plaintiffs failed to state a cause of action for fraudulent misrepresentation based on reliance on the lender's determination that the plaintiffs qualified for the loans. The court of appeal held that plaintiffs were not entitled to rely on the lender's qualification to decide whether they could actually afford the loans, noting the arms length nature of the borrower-lender relationship. 187 Cal. App. 4th at 436. *Perlas* did not find that a fiduciary relationship was necessary to allege elder abuse claims.

Plaintiffs allege that they were over 65 years old at the time they refinanced their loans and were living on a fixed income. (Compl. ¶ 10.) They further allege that Wells Fargo steered Plaintiffs away from fixed rate loans to the volatile adjustable interest rate loans which resulted in principal balances exceeding the original principal amounts and monthly payments that doubled. The Court determines that Plaintiffs have raised serious questions about the merits of their elder abuse claim. *See Zimmer v. Nawabi*, 566 F. Supp. 2d 1025 (E.D. Cal. 2008) (recognizing elder abuse claims against mortgage brokers for making false statements about refinancing terms); *Negrete v. Fidelity and Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1002 (C.D. Cal. 2006) (allegations that insurer used deceptive practices to deplete accumulated cash value of senior citizens' existing life insurance policies or annuities were sufficient to state a financial elder abuse claim).

Wells Fargo also challenges the sufficiency of allegations supporting Plaintiffs' accounting claim, which Plaintiffs fail to address in their motion. The Court determines that Plaintiffs have failed to demonstrate that they have raised serious questions about their

8

accounting claim but reserves ruling on the sufficiency of those allegations until the motion to dismiss is fully submitted. Having determined that Plaintiffs have sufficiently raised serious questions about their financial elder abuse claim, the Court proceeds with the sliding scale analysis.

**2.     Balance of Hardships**

Wells Fargo contends that they would suffer substantial harm by enjoining the foreclosure sales because it has incurred losses on the properties and would be forced to continue to hold a depreciating security interest. Wells Fargo has not, however, demonstrated that enjoining foreclosure would result in damage to the properties or otherwise threaten its security interest. The Court recognizes that Wells Fargo is lawfully entitled to proceed with the trustee's sale of both properties, which Plaintiffs concede are in default. However, any further monetary losses incurred in delaying the foreclosure sales would be recovered in the future if the Court determines that Plaintiffs' claims have no merit and allows the trustee sales to proceed after ruling on the pending motion to dismiss.

On the other hand, the Court determines that permitting the foreclosure sales to proceed before the Court has evaluated the merits of Plaintiffs' claims on Wells Fargo's pending motion to dismiss would result in severe hardship in light of the following considerations: Plaintiffs are elderly homeowners who are retired and living on a fixed income; foreclosure would result in loss of residence and loss of income; Plaintiffs allege that foreclosure would result in tax liabilities totaling at least one hundred thousand dollars (Compl. ¶ 18.); and Plaintiffs have applied for modification of the Home loan which would be rendered moot if Plaintiffs lose the Home to foreclosure while the loan modification application is still pending. In light of these considerations, the balance of hardships weigh heavily in favor of injunctive relief.

**3.     Irreparable Harm**

Despite Wells Fargo's contention that foreclosure of a home does not show irreparable harm, the Court recognizes that loss of a residence through foreclosure presents an irreparable injury. Further, the Court recognizes that foreclosure of the Rental Property does not result in loss of a home, but determines that foreclosure may not be adequately compensated by money

9

damages where Plaintiffs allege that the foreclosure sale will result in significant tax liability and that the rental income from the Rental Property is a significant portion of their monthly income to satisfy their basic living expenses. (Compl. ¶ 10, 18.)

### 4. Public Interest

The Court recognizes the public interest of enforcing Wells Fargo's secured property interests against default. On the other hand, state law provides special protection against elder abuse and Plaintiffs' financial elder abuse claim presents an issue of public concern about the "pick-a-pay" adjustable rate mortgage loans that were offered by Wells Fargo's predecessors in interest to elderly borrowers on fixed incomes.

### 5. Issuance of Preliminary Injunction and Bond Requirement

Applying the "serious questions" sliding scale approach recognized in *Alliance for The Wild Rockies*, 632 F.3d at 1135, the Court determines that issuance of a preliminary injunction to enjoin the foreclosure sales of the Rental Property and Home is proper based on the serious questions raised by Plaintiffs' financial elder abuse claim, the balance of hardships tipping heavily in favor of Plaintiffs, the strong possibility of irreparable injury to Plaintiffs if injunctive relief is denied, and the public interest in protecting the elderly against financial abuse recognized under California law.

Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Because Wells Fargo has a secured interest in the properties and will be permitted to proceed with foreclosure if the Court determines that Plaintiffs do not sufficiently state a claim for relief, the Court does not require Plaintiffs to post a bond at this time.

## C. Status Report

Upon Wells Fargo's decision whether to accept Plaintiffs' loan modification application, the parties are ordered to file a joint status report to notify the Court of that decision. If Wells

1  Fargo has not decided on the loan modification by June 10, 2010, Wells Fargo shall provide a
2  statement to the Court by that date reporting the status of Plaintiffs' loan modification request.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for preliminary injunction to enjoin foreclosure sale of the Home and Rental Property is GRANTED.

**IT IS SO ORDERED.**

Dated: May 11, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE