**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN F. REED, SR., ET AL, | |
| Plaintiffs, | No. C 11-00194 JSW |
| v. | |
| WELLS FARGO BANK, ET AL, | **ORDER GRANTING MOTION TO DISMISS** |
| Defendants. | |

Now before the Court is the motion to dismiss filed by defendant Wells Fargo Bank, N.A ("Wells Fargo"), as the successor in interest to Wachovia Mortgage FSB. The Court has considered the parties' papers, relevant legal authority, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The hearing set for October 14, 2011 is VACATED, and the Court GRANTS Wells Fargo's motion to dismiss.[1]

**BACKGROUND**

In their first amended complaint ("FAC"), Plaintiffs Benjamin F. Reed, Sr. and Irma M. Reed (collectively, "Plaintiffs") seek to enjoin foreclosure and challenge the mortgage servicing practices of Wells Fargo. Plaintiffs allege the following claims against Wells Fargo arising from two loans made to Plaintiffs by Wachovia Mortgage to refinance two properties in San Francisco: (1) financial elder abuse; (2) violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. ("UCL"); and (3) breach of contract. The loan made on Plaintiffs' principal residence at 2 Warren Drive (the "Home") is

---

[1] The Court GRANTS Wells Fargo's Request for Judicial Notice ("RJN"). *See* Fed. R. Evid. 201.

evidenced by the "Adjustable Rate Mortgage Note Pick-A-Payment Loan" for loan number 0047923503 dated January 17, 2008 in the original principal amount of $754,800.00. (FAC, Ex. A.) The loan made on Plaintiffs' rental property at 1534 44th Avenue (the "Rental Property") is evidenced by the "Adjustable Rate Mortgage 8Note Pick-A-Payment Loan" for loan number 0048186258 dated February 12, 2008 in the original principal amount of $425,000.00. (*Id.*, Ex. B.)

At the time Plaintiffs entered into the loans, Plaintiff Benjamin F. Reed was almost 80 years old, and Plaintiff Irma M. Reed was 78 years old. (FAC., ¶ 6.) Plaintiffs allege that they believed they had applied for fixed rate mortgage loans to refinance their properties, and instead were steered by individual loan officers and representatives of Wells Fargo's predecessors in interest, their agents and representatives, into these "Pick-A-Payment" Loans, which included provisions for highly volatile adjustable interest rates and negative loan amortizations, which resulted in the principal balances exceeding the original principal amounts of the Loans, and monthly payments that more than doubled. (*Id.*) Plaintiffs allege that:

> This steering by individual loan officers and representatives of Wachovia occurred in the period of time between when Plaintiffs first inquired about obtaining refinance loans for the properties, and to and through the loan closing. Plaintiffs met numerous times with such loan officers and representatives during this time period, and were consistently given assurances by such defendant officers and representatives about the proposed loan terms which were false, untrue, and with the intent to deceive Plaintiffs, and which resulted in damage to Plaintiffs, all as further alleged in this Complaint.

(*Id.*)

Plaintiffs allege that "Pick-A-Payment" Loans have been the subject of an ongoing investigation by the California Department of Justice to determine if they violated California law, including Section 17200 and 17500 of the California Business and Professions Code. (*Id.*, ¶ 6 and Ex. C.)

Plaintiffs allege that loan officers and representatives of Wachovia Bank knew that the loans contained terms which were fundamentally unfair, unconscionable, and illegal, including allowing the interest rate to change just after two months and negative principal amortization. (*Id.*, ¶ 9.) "Despite this knowledge, Wachovia's loan officers and representatives made explicit and untrue oral statements to Plaintiffs that such loans were well suited to Plaintiffs' needs and

2

desires, that the Plaintiffs would enjoy the benefit of low monthly payments and low interest rates, for the entire life of the loans." (*Id*.)

Plaintiffs further contend that Wells Fargo's predecessors in interest wrongfully marketed these loans to Plaintiffs, despite the fact that they knew Plaintiffs were of advanced age and were on a limited fixed income. (*Id*., ¶ 10.) Plaintiffs allege that Wells Fargo's predecessors in interest "falsely marketed these Loans to Plaintiffs with no regard for the inaccuracy of their statements about the loan terms, and falsely misrepresented the benefit of these loans to Plaintiffs." (*Id*.) They assured Plaintiffs that these loans were appropriate for them and gave them false assurances that these loans would enable Plaintiffs to maintain a very low interest rate. (*Id*., ¶ 11.) Plaintiffs did not know "until the time for signing the loan documents" that they were not for long term low fixed rate loans. (*Id*.)

Plaintiffs defaulted on these loans. After defaulting, Plaintiffs tried to have Wells Fargo modify their loans. Wells Fargo told Plaintiffs that they would be favorably considered for loan modifications if they produced extensive documentation. (*Id*., ¶ 14.) Wells Fargo repeatedly lost or misplaced Plaintiffs' documents and wrongfully denied Plaintiffs requests for loan modifications. (*Id*.) Plaintiffs allege that "[t]his entire series of activities by defendant Wells Fargo established an oral agreement, a contract, with Plaintiffs to fairly consider loan modifications for the Loans pursuant to defined standards Wells Fargo had established through its regulatory overseers." (*Id*.) Plaintiffs contend that Wells Fargo's failure to "fairly review and ... approve loan modifications for Plaintiffs' Loans" was a breach of the covenant of good faith and fair dealing and was in "violation of the standards applicable to consideration of loan modifications by Wells Fargo as a lender whose loan modification programs are described under applicable federal and state law (including, without limitation, the California Foreclosure Prevention Act, the Rosenthal Fair Debt Collection Practices Act, and the Federal Making Home Affordable Program)." (*Id*.)

Finally, Plaintiffs allege that Wells Fargo and the Trustee claimed amounts in the notice of default which are not recoverable under the terms of the deeds of trust and promissory notes entered into by Plaintiffs. (*Id*., ¶ 15.)

3

# ANALYSIS

**A.     Applicable Legal Standards for Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

Where a plaintiff alleges fraud, however, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires the plaintiff to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the charged misconduct. *See Vess v. Ciba*

4

*Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994). However, Rule 9(b) particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106 ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotation marks and citations omitted).

**B.     Wells Fargo's Motion to Dismiss.**

    **1.     Plaintiffs' Claims Premised on Misrepresentations**.

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In giving leave to amend, the Court admonished Plaintiffs that they should take care to plead any claims premised on alleged misrepresentations to plead such claims with sufficient particularity in accordance with Federal Rule of Civil Procedure 9(b). When a party pleads fraud against a corporation, as Plaintiffs do here, the party must allege "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991); *see also Dubin v. BAC Home Loans Servicing,* 2011 WL 794995, *5-6 (N.D. Cal. Mar.1, 2011).

Upon review of Plaintiffs' FAC, the Court finds that Plaintiffs fail to allege any misrepresentations with sufficient particularity. Plaintiffs fail to identify who made any alleged misrepresentations or such individuals' authority to speak. Instead, they generally allege that statements were made by "individual loan officers and representatives," without identifying any individual by name, or by providing sufficient information which would enable Wells Fargo to

5

1   identify the individual or individuals.  Moreover, Plaintiffs fail to describe when such alleged
2   misrepresentations occurred.  Despite the fact that they signed two loans at issue in their FAC,
3   approximately a month apart, Plaintiffs allege that the alleged misrepresentations were made "in
4   the period of time between when Plaintiffs first inquired about obtaining refinance loans for the
5   properties, and to and through the loan closing" without specifying as to which loan they were
6   referring.  Additionally, Plaintiffs fail to identify what were the false statements that were
7   allegedly made.  It is not clear whether Plaintiffs allege that an individual told them that the
8   loans provided a specific rate, for example five percent for fixed term of thirty or fifteen years
9   or whether they allege that there were told, generally, that they would enjoy low payments and
10  that the loans were well suited for their needs.  If Plaintiffs elect to amend, they should take care
11  to clearly state what false statements made were, by whom they were made (or provide
12  sufficient identifying information about such individuals), about which loans they were made,
13  and when they were made.
14       Wells Fargo also argues that Plaintiffs have not and cannot allege reasonable reliance on
15  any alleged misrepresentations because the notes clearly and expressly specified the terms of
16  the loans, including that they provided variable rates.  Plaintiffs do not respond to this
17  argument.  If Plaintiffs elect to amend their claims, they should take care to plead facts which, if
18  true, could lead a reasonable trier of fact to conclude that their reliance on any alleged
19  misrepresentations regarding the loan terms was reasonable in light of the fact that the loan
20  documents stated the actual loan terms.
21       In addition, the Court notes that Plaintiffs allege that they did not know that the loans
22  did not provide long term low fixed rates "until the time for signing the loan documents" (FAC,
23  ¶ 11), which implies that Plaintiffs knew that the rates in the loans were variable before, albeit it
24  just before, they signed the loan documents.  Moreover, because Plaintiffs' loan for their rental
25  property closed almost a month after the loan for their home property, they had the documents
26  which provided the actual terms for one loan before they signed the second loan.  If Plaintiffs
27  amend, they should take care to allege facts explaining when they discovered the actual terms
28  on the loan for their home property and the loan for their rental property.  If Plaintiffs knew that

6

the loans did not provide long term low fixed rates *before* they signed either loan, Plaintiffs should take care to plead facts which, if true, show that their reliance on any misrepresentations was reasonable. Therefore, the Court grants Wells Fargo's motion to dismiss Plaintiffs' elder abuse claim and UCL claim to the extent they are premised on alleged misrepresentations.

### 2. Claims Premised on Improper Charges in Foreclosure Notices.

Plaintiffs clarified in their FAC that they allege that Wells Fargo included charges in the notice of default and the notice of sale which were not authorized by the terms of the deeds of trust and the promissory notes entered into by Plaintiffs. (FAC, ¶ 15.) However, Plaintiffs do not allege that they paid these allegedly unauthorized fees or otherwise allege facts to show how they were damages by these notices. Without such facts, Plaintiffs fail to allege that they suffered any loss of property or were otherwise damaged and, therefore, fail to allege any claims premised on such notices. Therefore, the Court grants Wells Fargo's motion to dismiss Plaintiffs' claims to the extent they are premised on alleged misrepresentations.

### 3. Plaintiffs Breach of Contract and Breach of Implied Covenant Claims.

Plaintiffs also allege they had an oral contract with Wells Fargo in which Wells Fargo agreed to "fairly consider" loan modifications "pursuant to defined standards Wells Fargo had established through its regulatory overseers." (FAC, ¶ 14.) Plaintiffs allege that Wells Fargo breached of the covenant of good faith and fair dealing by not considering the requested loan modifications in accordance with the standards "under applicable federal and state law (including, without limitation, the California Foreclosure Prevention Act, the Rosenthal Fair Debt Collection Practices Act, and the Federal Making Home Affordable Program)." (FAC, ¶ 36.)

"Formation of a contract requires parties capable of consent, the consent of those parties, a lawful object, and sufficient consideration." *ASP Properties Group v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1268-69 (2005) (citing Cal. Civ. Code § 1550). Under California law, "good consideration" is defined as follows:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the

7

>time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605. "Thus, there are two requirements [under California law] in order to find consideration." *Steiner v. Thexton,* 48 Cal. 4th 411, 420 (2010) (citing Cal. Civ. Code § 1605). First, "[t]he promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice.... [E]ither alone is sufficient to constitute consideration." *Id.* Nonetheless, "[i]t is not enough ... to confer a benefit or suffer prejudice for there to be consideration .... [T]he second requirement is that the benefit or prejudice must actually be bargained for as the exchange for the promise. Put another way, the benefit or prejudice must have induced the promisor's promise." *Id.*; *see also Simmons v. Cal. Inst. of Tech.,* 34 Cal. 2d 264, 272 (1949) ("[T]he consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise."). The adequacy of consideration is tested at the time of the making of the contract, and courts do not weigh the quantum of the consideration as long as it has some value. *A.J. Industries, Inc. v. Ver Halen*, 75 Cal. App. 3d 751, 761 (1977) (citations omitted).

Here, Plaintiffs argue that Wells Fargo's requirement that Plaintiffs submit extensive and detailed personal financial information constituted consideration because Wells Fargo was required by "applicable federal law" to process and consider loan modifications on defaulted mortgage loans and it could not do so without Plaintiffs cooperation in providing this information. (Opp. at 6.) Plaintiffs do not specify what federal law required Wells Fargo to consider Plaintiffs' loan modification. Moreover, Plaintiffs fail to explain how their submission of personal financial information could have *induced* Wells Fargo *to agree* to fairly consider a loan modification. Presumably, Plaintiffs would have provided their financial information *after* an agreement, to the extent there was one, to fairly consider a loan modification was created. It would make no sense for Plaintiffs to provide financial information in order to induce Wells Fargo to agree to fairly consider a loan modification.

Moreover, Plaintiffs fail to allege that they incurred any damages from this alleged agreement to "fairly consider" a loan modification. Notably, Plaintiffs' alleged agreement is one to merely consider providing a loan modification, not an agreement to actually modify their

8

loans. Therefore, it is not clear what damages Plaintiffs could allege. The Court, thus, grants Wells Fargo's motion to dismiss Plaintiffs' breach of contract claim. Nevertheless, the Court will provide Plaintiffs with one more opportunity to plead a breach of contract claim.

If Plaintiffs elect to amend their claim for breach of contract, the Court notes that Plaintiffs' alleged breach of contract claim appears to fail for another, independent reason. In order to state a claim for breach of contract, a party must allege terms that are "sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (quoting *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991)). The alleged promises in the contract "must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. ... Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Id*. (internal citations omitted). As the court explained in *Bustamente*, if "a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." *Id*. at 209-210 (finding terms "take all steps *necessary*" and "*adequate* funding" were fatally uncertain) (emphasis added).

Notably, Plaintiffs do not allege that Wells Fargo was required to provide them with a loan modification, but only that Wells Fargo entered into an oral contract to "fairly consider" a loan modification. The term "fairly" appears to be uncertain because the Court would not be able to ascertain whether Wells Fargo complied with this term. The Court also notes that Plaintiffs' allegation that Wells Fargo had an obligation to consider a loan modification "pursuant to defined standards Wells Fargo had established through its regulatory overseers" is uncertain. Plaintiffs do not set forth the terms of these regulations or "defined standards." It is not clear how these unspecified statutes or regulations provided any boundaries to the parties' alleged oral contract.

9

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Wells Fargo's motion to dismiss. The Court is providing Plaintiffs with *one more* opportunity to plead claims against Wells Fargo and to cure the defects identified in this Order. Plaintiffs shall file their amended complaint, if any, within twenty days of the date of this Order. If Plaintiffs file an amended complaint in accordance with this Order, Wells Fargo shall either file an answer or move to dismiss within twenty days of service of the amended complaint. If Plaintiffs do not amend their complaint, this action will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: October 11, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE